# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51874-1-II |
| Respondent, | |
| v. | |
| ANDREW FLOYD HIEB, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Andrew Floyd Hieb appeals his convictions for two counts of first degree child rape, one count of first degree child molestation, one count of first degree attempted rape of a child, and one count of second degree child molestation.

Hieb argues that the State's arguments during closing were improper and prejudicial, and violated his right to a fair trial. The asserted improper arguments made by the prosecutor included: (1) describing the victim's testimony by speaking in the first person; (2) arguing that Hieb told the victim that the abuse was her fault; (3) claiming that Hieb's counsel asked the jury to blame the victim; (4) implying that the victim suffered from a torn hymen; (5) arguing the jury should consider what the victim endured; (6) misstating the burden of proof when she compared reasonable doubt to a jury having confidence in its decision; (7) vouching for the victim's credibility; and (8) arguing that the justice due Hieb was also due to the victim. Hieb claims that the cumulative effect of these asserted improper arguments violated his right to a fair trial.

We agree that the first four arguments were improper. We assume without deciding that the next two arguments were improper but conclude that the trial court's instruction cured any prejudice. We conclude that the last two arguments were not improper. Our ultimate holding is that none of the arguments standing alone are sufficiently prejudicial to warrant reversal and Hieb fails to show that the cumulative effect of the errors denied him a fair trial. Thus, we affirm the convictions.

FACTS

I. BACKGROUND

The State charged Hieb with one count of first degree rape of a child (count I) and three counts of first degree child molestation (counts II-IV). The State filed an amended information adding one count of second degree child molestation (count V), one count of first degree child molestation (count VI) and amending count III to include the alternative means of first degree attempted rape of a child.

At trial, the State's case was based on the testimony of the victim. Defense counsel argued that there was reasonable doubt because there was evidence that impeached the victim's testimony, there was no corroborating evidence, and the State failed to adequately investigate the allegations.

II. THE VICTIM'S TESTIMONY

The victim testified at trial that she knew Hieb her entire life because he was her mother's childhood friend and lived up the road from their house. The victim saw Hieb five days a week. She would often go to his house for dinner when she was younger. Hieb worked in landscaping and helped the victim's mother with the house.

The victim testified that Hieb sexually abused her repeatedly when she was in elementary school. She gave extremely detailed accounts of each incident.

The victim testified that she never reported the abuse because Hieb told her not to and she thought it was her fault. On October 9, 2016, the victim's mother was informed of an incident involving allegations of improper conduct by Hieb with the victim's young niece. The victim's mother asked her if Hieb had ever touched her after learning what had happened to her niece. The victim told her mother that Hieb had been sexually touching her for her entire life. Shortly thereafter, she and her mother called the police. An officer came to their house and the victim spoke with a child forensic interviewer.

### III. JURY INSTRUCTIONS

During trial, the State proposed the standard Washington Pattern Jury Instruction, 4.01, regarding reasonable doubt which includes the "abiding belief" language. Hieb proposed a jury instruction explicitly omitting the "abiding belief" language.

The trial court accepted Hieb's proposed instruction omitting the "abiding belief" to which the State took exception. The State argued, "My understanding is that the court is not allowing the State to use the words 'abiding belief,' which I would argue to the court that 'abiding belief' is an accurate statement of the law. The State should be allowed to argue that even if the court is going to give the defense['s] proposed instruction of 'beyond a reasonable doubt.'" Report of Proceedings (RP) at 976. To which the court responded, "Well, if I was going to give 'abiding belief,' then it would be perfectly fine to argue that. Since I'm not, you can't. You have to argue the law based on the instructions of the court." RP at 976.

No. 51874-1-II

The court's instruction on reasonable doubt stated,

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

Clerk's Papers (CP) at 46.

## IV. CLOSING ARGUMENTS

### A. SPEAKING IN THE FIRST PERSON TO DESCRIBE THE VICTIM'S TESTIMONY

The prosecutor began closing arguments as follows:

[STATE]: Thank you, Your Honor. "When it happened, I didn't understand what he was doing to me. I didn't understand the gravity --"

[DEFENSE COUNSEL]: Objection, Your Honor. At this time, counsel is speaking in the first person. She is playing to the prejudice and passions of the jury. This is inappropriate.

THE COURT: Overruled. You may proceed.

[STATE]: Thank you. "I didn't understand the gravity of what was happening to me. I trusted him. I didn't want to make my mom mad. I thought it was my fault."

[DEFENSE COUNSEL]: Objection.

THE COURT: Objection is overruled.

[STATE]: "He stopped when I told him to stop. He never touched me again." [The victim] testified and told you that she held on to what the defendant had done to her, kept it to herself for over eight years of sexual abuse.

RP at 995-96.

### B. ARGUMENT THAT HIEB TOLD THE VICTIM THE ABUSE WAS HER FAULT

The prosecutor argued the following:

[STATE]: Defense counsel make[s] the comments about the shortcomings of the law enforcement investigation. I submit to you that those shortcomings don't

4

change what happened to [the victim]. [The victim] has been blamed for the defendant's actions by *him telling her that it is her fault*. She is the one in trouble.

[DEFENSE COUNSEL]: Objection, Your Honor. There is no testimony to support that. Assumes facts not in evidence.

THE COURT: The jury will determine what the facts are. They have been advised previously that the lawyer's remarks, statements, and arguments are not evidence. They determine what the evidence was.

RP at 1086 (emphasis added).

C. DEFENSE COUNSEL ASKED THE JURY TO BLAME THE VICTIM

The prosecutor's above quoted argument implied that defense counsel was advocating for the jury to blame the victim.

D. IMPLYING THAT THE VICTIM SUFFERED FROM A TORN HYMEN

In his closing argument, defense counsel argued that there was insufficient evidence because law enforcement failed to conduct additional investigation. The prosecutor argued on rebuttal that there could always be more evidence, but that here, there was enough evidence to convict.

The prosecutor argued the following:

[STATE]: We have to prove it beyond a reasonable doubt, and we can do that if our witness is credible and you find her credible and you find that she has testified to the elements in this packet and that we have proven it beyond a reasonable doubt. That is how we do it. There is nothing that says we need to corroborate.

I would submit to you, as we've discussed earlier, these are crimes of secrecy. You are not going to have corroborating evidence. So what if she had a medical exam? That would have been great. It would have been one more box to check off. *Who is to say that torn hymen is from the defendant?* There is nothing to say that. There's other ways for those things to happen. It's not going to be –

[DEFENSE COUNSEL]: Objection, Your Honor. Assumes facts not in evidence.

5

THE COURT: Overruled.

[STATE]: There is not going to be DNA evidence from the defendant by the time that she goes in and discloses.

[DEFENSE COUNSEL]: Objection, Your Honor. Assumes facts not in evidence.

THE COURT: Overruled.

RP at 1079-80 (emphasis added).

E. JURY SHOULD CONSIDER WHAT THE VICTIM ENDURED

The prosecutor argued the following:

[STATE]: When you look at that [referring to the earlier argument that justice that is due the accused is also due the accuser], you look at what does the victim . . . experience in this? And you consider everything carefully. *You consider what she went through* and what she was able to tell you. You consider –

[DEFENSE COUNSEL]: Again, objection at this time. She is playing to the passions and prejudice of the jury.

THE COURT: The jury has been instructed as to what the burden of proof is on the State. I think what counsel is trying to talk about is [the] credibility of the witness. If counsel is trying to talk about that, you should find the defendant guilty because this is difficult for the victim, then that is not correct. That is not what the court's instructions say.

RP at 1083 (emphasis added).

F. MISSTATEMENT OF THE LAW REGARDING REASONABLE DOUBT

The prosecutor argued the following:

[STATE]: Defense counsel is shining the spotlight on law enforcement's shortcomings or potential shortcomings. [The victim] shouldn't pay for law enforcement's potential shortcomings. She told you what happened. She was credible. She told you the truth of what occurred. You are always going to want more. There is no question about that.

The question is, if you find the defendant guilty -- and I submit to you that the State has proven beyond a reasonable doubt that he is guilty -- *do you have enough to be*

No. 51874-1-II

*confident in that decision*?  If you have enough to be confident in that decision, then we have proven it beyond a reasonable doubt.

[DEFENSE COUNSEL]:  Objection, Your Honor.  That is not the standard.

THE COURT:  I'm sorry.  I didn't hear the last remark.  It didn't sound like it was inappropriate to me.

[STATE]:  If you have enough to be confident in that decision –

THE COURT:  The jury has been instructed as to what the burden of proof is in Instruction No. 2.  They should follow that instruction as to the law.

RP at 1087 (emphasis added).

G.  VOUCHING FOR THE VICTIM'S CREDIBILITY

The prosecutor argued that the victim was a credible witness as follows:

[STATE]:  Next thing I want to look at is credibility.  The judge went through with you [i]nstruction [number one], which covers credibility.  No matter what is said, if anything is misstated, I'm not the judge of credibility.  The defense is not the judge of credibility.  The detective is not the judge of credibility.  The forensic interviewer is not the judge of credibility.  The only person that is the judge of credibility is you, the jury.  That's it.  You are the sole judges of credibility.  You make that determination . . . I submit to you that when you are determining the credibility of [the victim], *the State submits, that she was credible.  She got up there.  She told the truth.*  She gave you all of the information that she had, all of the information that she could take in.  There are two different options here in looking at that.  She made it up.  She made up these allegations.

[DEFENSE COUNSEL]:  Again, Your Honor, objection.  This is improper argument.

THE COURT:  Overruled.

RP at 1000-02 (emphasis added).

7

H.  ARGUING THAT JUSTICE DUE HIEB IS ALSO DUE THE VICTIM

The prosecutor argued that the justice due to Hieb is also due to the victim:

[STATE]:  I submit to you that you don't have a reasonable doubt.  The State has proven this case beyond a reasonable doubt.  We can't take you back in time and have you hover above the room in which they were occurring and allow you to absorb every single act that was occurring at the time.  Quite frankly, if we could, no one would sign up to go to jury duty because no one would want to experience that.

Just as defense counsel says -- and he makes the comparison to this is worse than murder.  I don't know if it is worse than murder.  That is for anybody to decide, but that's not what these instructions tell you is before you.  What is before you is *justice that is due the accused is also due the accuser*.

[DEFENSE COUNSEL]:  Objection, Your Honor.  That phrase –

THE COURT:  Proceed.

RP at 1082-83 (emphasis added).

## V.  JURY CONVICTION AND GUILTY PLEA

A jury found Hieb guilty of two counts of first degree child rape (counts I and IV), one count of first degree child molestation (count II), one count of first degree attempted rape of a child (count III), and one count of second degree child molestation (count V).

Hieb appeals his convictions.[1]

---

[1] Following his convictions, Hieb pleaded guilty to an amended complaint alleging one count of second degree child molestation against the victim's niece (count VI).  This plea and resulting conviction are not the subject of this appeal.

ANALYSIS

I.  STANDARDS OF REVIEW

A criminal defendant is entitled to a fair trial.  U.S. CONST. amends. VI, XIV, § 1; WASH. CONST. Art. I, §§ 3, 21, 22.  To prevail on a claim of prosecutorial misconduct, a defendant must show that the prosecutor's conduct was both improper and prejudicial.  *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).

A prosecutor has "wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses."  *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011).  It is improper for the prosecutor to argue facts that are not in evidence.  *Glasmann*, 175 Wn.2d at 704-05.  It is misconduct for a prosecutor to personally vouch for the credibility of a witness.  *State v. Brett*, 126 Wn.2d 136, 175, 892 P.2d 29 (1995).

However, improper arguments do not necessarily require reversal.  "If the defendant objected at trial, the defendant must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict."  *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).  We evaluate the effect of a prosecutor's conduct by examining the conduct in the context of the full trial, the evidence presented, the issues, and the instructions given to the jury.  *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011).

II.  CLOSING ARGUMENTS

A.  SPEAKING IN THE FIRST PERSON TO DESCRIBE THE VICTIM'S TESTIMONY

Hieb argues that the prosecutor's argument describing the victim's testimony by speaking in the first person was improper and prejudicial.  We hold that the argument was improper, and the court should have sustained the objection, but that it was not prejudicial.

Hieb cites to *State v. Pierce*, 169 Wn. App. 533, 280 P.3d 1158 (2012) to support his argument. In *Pierce*, the prosecutor constructed an entire conversation which was not supported in the record between the defendant and his victims just before he murdered them. 169 Wn. App. at 543. The prosecutor also created a fictitious internal dialogue the defendant had with himself before deciding to rob and murder his victims. *Pierce*, 169 Wn. App. at 542. The prosecutor recited this dialogue in a first person narrative during the State's closing argument. *Pierce*, 169 Wn. App. at 542-43. We held that these arguments had no basis in the record and improperly requested the jurors to step into both the victim's and the defendant's shoes. *Pierce*, 169 Wn. App. at 555.

Here, similarly, the prosecutor assumed the role of the victim and addressed the jury by speaking in the first person. But unlike the arguments in *Pierce*, the prosecutor's arguments were not based on a fictional dialogue. However, a prosecutor may not speak in the first person when describing the victim's testimony.

A prosecutor certainly can use the first person when *quoting* a victim's trial testimony. But here, although the prosecutor gave the impression she was quoting, in fact she was paraphrasing and used language that the victim did not use. Accordingly, we hold that the prosecutor's use of the first person to describe the victim's testimony was improper.

However, we hold that the prosecutor's use of the first person to describe the victim's testimony was not prejudicial because it did not mischaracterize her testimony and it did not have a substantial likelihood of affecting the verdict.

B.  ARGUING THAT HIEB TOLD THE VICTIM THE ABUSE WAS HER FAULT

Hieb argues that the prosecutor's argument, that Hieb told the victim the abuse was her fault, was improper and prejudicial because there was no evidence in the record to support this argument.  We agree with Hieb that it was improper, but hold that it was not prejudicial.

The prosecutor argued, "[The victim] has been blamed for the defendant's actions by *him telling her that it is her fault*.  She is the one in trouble."  RP at 1086 (emphasis added).  But there was no evidence presented at trial that Hieb told the victim that the sexual abuse was her fault.  The court should have sustained defense counsel's objection to the argument.  Thus, we hold that the prosecutor's statement here was improper.

However, the prosecutor's argument did not have a substantial likelihood of affecting the jury's verdict because the victim otherwise gave detailed accounts of the incidents of abuse.  We hold that the argument although improper, was not prejudicial.

C.  DEFENSE COUNSEL ASKED THE JURY TO BLAME THE VICTIM

Hieb argues that the prosecutor's argument, that defense counsel asked the jury to blame the victim for the abuse, was improper and prejudicial.  We agree that the prosecutor's argument was improper, and the court should have sustained the objection.  However, we hold that the argument was not prejudicial.

Here, the prosecutor implied that defense counsel was advocating for the jury to blame the victim.  Defense counsel objected and without formally ruling on the objection, the court stated, "The jury will determine what the facts are.  They have been advised previously that the lawyer's remarks, statements, and arguments are not evidence.  They determine what the evidence was."

RP at 1086. However, the court should have sustained the objection. The court's curative instruction should have also instructed the jury to disregard the argument.

To warrant reversal, a defendant "must show that the prosecutor's misconduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict." *Emery*, 174 Wn.2d at 760. Here, the prosecutor's argument did not have a substantial likelihood of affecting the jury's verdict because the argument itself was brief and subtle. The court's curative instruction to the jury also helped to negate any prejudice. Accordingly, the prosecutor's argument was not prejudicial.

D. IMPLYING THAT THE VICTIM SUFFERED A TORN HYMEN

Hieb argues that the prosecutor's argument, implying that the victim suffered a torn hymen, was improper and prejudicial because there is no evidence in the record supporting it. Again, we agree that this argument was improper, but hold that it was not prejudicial.

When arguing that corroborating evidence was unnecessary, the prosecutor stated, "Who is to say that torn hymen is from the defendant?" RP at 1080. The prosecutor did not expressly state that the victim had a torn hymen, but she certainly implied that fact. But there was no evidence presented at trial that the victim had suffered a torn hymen. Thus, we agree that the prosecutor's statement was improper.

However, the prosecutor's statement did not have a substantial likelihood of affecting the jury's verdict because it was included in a list of other hypothetical pieces of evidence that the jury may have liked to have had, but did not exist. Thus, although the argument was improper, we hold that when considered in context with the entire surrounding argument, it was not prejudicial.

E.  THE JURY SHOULD CONSIDER WHAT THE VICTIM ENDURED

Hieb argues that the prosecutor's argument, asking that the jury consider what the victim endured, was improper and prejudicial.  Assuming without deciding that this argument was improper, the court issued a curative instruction which told the jury that this argument was incorrect.  Thus, even assuming without deciding that the argument was improper, we hold that it did not cause prejudice in light of the court's curative response.

Here, the prosecutor, referring to her earlier argument, argued that the justice due to Hieb was also due to the victim, and asked the jury to carefully consider all of the information.  The prosecutor argued that "[y]ou consider what she went through and what she was able to tell you." RP at 1083.  Defense counsel objected, and the court responded as follows:

> The jury has been instructed as to what the burden of proof is on the State.  I think what counsel is trying to talk about is the credibility of the witness.  If counsel is trying to talk about that, you should find the defendant guilty because this is difficult for the victim, then that is not correct.  That is not what the court's instructions say.

RP at 1083.

The prosecutor's statement did not cause prejudice in light of the court's curative response. Thus, even assuming without deciding that the argument was improper, we hold that Hieb fails to show that it was prejudicial.

F.  MISSTATEMENT OF THE LAW REGARDING REASONABLE DOUBT

Hieb argues that the prosecutor misstated the burden of proof when equating reasonable doubt to the jury's confidence in its decision.  Assuming without deciding that the argument was improper, we hold that it did not cause prejudice in light of the court's curative response.

"'When a prosecutor compares the reasonable doubt standard to everyday decision making, it improperly minimizes and trivializes the gravity of the standard and the jury's role.'" *State v. Lindsay*, 180 Wn.2d 423, 436, 326 P.3d 125 (2014) (quoting *State v. Lindsay & Holmes*, 171 Wn. App. 808, 828, 288 P.3d 641 (2014)).

Here, the prosecutor argued:

> The question is, if you find the defendant guilty -- and I submit to you that the State has proven beyond a reasonable doubt that he is guilty -- do you have enough to be confident in that decision? *If you have enough to be confident in that decision, then we have proven it beyond a reasonable doubt.*

RP at 1087 (emphasis added).

After objection, the court reminded the jury that they had been instructed on the burden of proof. RP at 1087. The court later instructed the jury on reasonable doubt as follows:

> A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence.

CP at 46.

Even assuming the prosecutor misstated the law on the State's burden of proof, the court properly gave a curative instruction that reminded the jury to follow the instructions as given, and we presume that a jury follows the court's instructions. *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007). Therefore, even if the prosecutor's misstatement of the law was improper, it did not cause prejudice in light of the court's curative response.

G. VOUCHING FOR THE VICTIM'S CREDIBILITY

Hieb argues that the prosecutor's argument, vouching for the victim's credibility, was improper and prejudicial. Specifically, he argues that "[t]he prosecutor's comments impermissibly

14

conveyed that she was [the victim's] personal representative and impermissibly conveyed her personal belief in [the victim's] credibility" because the prosecutor "told [the] jurors that [the victim] was credible and that '[s]he told the truth.'" Br. of Appellant at 12 (quoting RP at 1002). We hold that the prosecutor's argument regarding the victim's credibility was not improper because it was prefaced with the phrase "the State submits." RP at 1001.

It is improper for the prosecutor to vouch for a witness's credibility. *Brett*, 126 Wn.2d at 175. Here, most significantly, the prosecutor prefaced her argument with the phrase, "the State submits." The prosecutor then explained that the judge had reviewed the instruction on witness credibility with the jury, but she wanted to remind the jurors that they were the sole judges of witness credibility.

We hold that the prosecutor's argument was not improper because it was prefaced by the phrase, "the State submits." Thus, Hieb's claim fails.

H. JUSTICE DUE HIEB IS ALSO DUE THE VICTIM

Hieb next argues that the prosecutor's argument, that justice due Hieb is also due to the victim, was improper and prejudicial. We disagree with Hieb and hold that this statement was not improper because it was contextually appropriate.

Here, the prosecutor made the following argument:

[STATE]: I submit to you that you don't have a reasonable doubt. The State has proven this case beyond a reasonable doubt. We can't take you back in time and have you hover above the room in which they were occurring and allow you to absorb every single act that was occurring at the time. Quite frankly, if we could, no one would sign up to go to jury duty because no one would want to experience that.

Just as defense counsel says -- and he makes the comparison to this is worse than murder. I don't know if it is worse than murder. That is for anybody to decide,

15

but that's not what these instructions tell you is before you. What is before you is *justice that is due the accused is also due the accuser*.

[DEFENSE COUNSEL]: Objection, Your Honor. That phrase –

THE COURT: Proceed.

RP at 1082-83 (emphasis added).

Because the statement was contextually appropriate, we hold that it was not improper, and thus, Hieb's claim fails.

## III. CUMULATIVE ERROR DOCTRINE

Hieb argues that the cumulative effect of these errors deprived him of a fair trial. We disagree and hold that the errors did not cause cumulative prejudice, and thus, he was not denied a fair trial.

Cumulative errors may merit reversal even when each error alone could be considered harmless. *In re the Pers. Restraint of Yates*, 177 Wn.2d 1, 65-66, 296 P.3d 872 (2013). Courts apply the cumulative error doctrine to cases of repetitive or frequent errors. *See Yates*, 177 Wn.2d at 65-66. "Under the cumulative error doctrine, a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *Emery*, 174 Wn.2d at 766. This doctrine does not apply when the defendant fails to establish how the claimed instances of prosecutorial misconduct affected the outcome of the trial. *Thorgerson*, 172 Wn.2d at 454.

The issue is whether the cumulative effect of the prosecutor's improper arguments, as discussed above, in the context of the full trial, the evidence presented, the issues, and the instructions given, show a substantial likelihood of affecting the jury's verdict. *Emery*, 174 Wn.2d at 760.

As discussed above, we agree with Hieb that some of the prosecutor's arguments were improper, including the prosecutor's use of the first person to describe the victim's testimony, that Hieb told the victim the abuse was her fault, that Hieb's counsel asked the jury to blame the victim, and implying that the victim suffered from a torn hymen. Even assuming without deciding that the prosecutor's others arguments—that the jury should consider what the victim endured and misstating the burden of proof—were also improper, they were not prejudicial in light of the court's curative response.

After determining that these arguments were improper, but not prejudicial, and viewing them in light of the context of the total trial, the evidence, the issues, and the court's instructions, Hieb must demonstrate how these instances of impropriety substantially affected the outcome of the jury's verdict. *See Emery*, 174 Wn.2d at 760. The victim testified about her interactions with Hieb in very specific detail. The jury evaluated the witnesses' credibility. The court repeatedly reminded the jury to weigh the actual evidence rather than the argument. Additionally, the court reminded the jury that they were to follow the reasonable doubt standard as instructed.

Hieb has not explained how the instances of impropriety substantially affected the outcome of the jury's verdict. Nor has he shown how these errors prejudiced his right to a fair trial. Therefore, we hold that Hieb is not entitled to a new trial under the cumulative error doctrine.

No. 51874-1-II

CONCLUSION

We hold that although some of the State's closing arguments were improper, the errors did not cumulatively deprive Hieb of his right to a fair trial, and thus, we affirm Hieb's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

We concur:

MAXA, J.

GLASGOW, J.

18